UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                       Case No. 19-cr-20316
                                         Hon. Denise Page Hood

DENNIS POMANTE,

        Defendant.
_____/

**EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

NOW COMES DENNIS POMANTE, defendant herein, by and through his attorneys, David F. DuMouchel and Mark J. Kriger, and moves this Honorable Court for the entry of an Order modifying his sentence by replacing the remaining term of imprisonment by an equal period of home confinement, and in support of said motion says as follows:

1. He is the defendant in the above-captioned cause, convicted upon his plea of guilty to the charge of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371, and sentenced on December 19, 2019 to a term of 12 months imprisonment, to be followed by a term of supervised release of two years.

2.  He surrendered the Federal Correctional Institution at Morgantown, West Virginia, on March 4, 2020, and is now housed there, under Register No. 57589-039.

3, Defendant is 69 years old, with a number of pre-existing medical conditions which place him at great risk of both contracting and suffering the most severe consequences of COVID-19; specifically:

    a.    He was treated for kidney cancer in 2016, including a partial removal of one kidney;

    b.    Since that time, while he has been cancer-free, he has developed renal insufficiency;

    c.    In addition, he is diabetic; and

    d.    He also suffers from hypertension, obesity, and impaired glucose tolerance;

all as attested to by the letters from his urologist and personal physician, attached hereto as Exhibit One.

4.  On March 30, 2020, defendant received blood test results showing an elevated level of creatinine, indicating kidney malfunction, and thereafter sent the following communication to Morgantown Warden F. J. Bowers:

> Please regard this as a formal application for compassionate release of home confinement rules added by the CARES Act authorized by A.G. William Barr.
>
> I turned 69 years old on March 31. 2020.  I received a 1 year sentence on December 19, 2019.  At my sentencing hearing the judge gave me 1

year but said I would serve an 8 month punishment under the First Step Act. I have served 5 weeks.

My largest reason for my request is on March 30, 2020 I received my blood results from your P.A. Meyers. He explained to me my creatine level was 1.7 (should be 1.3 or below), given the fact I had kidney cancer 2 ½ years ago having had 1/3 of my left kidney removed.

Now my kidneys are malfunctioning. Mr. Meyers is setting an appointment with a nephrologist. I had my wife contact my kidney cancer doctor to check. He does not want me to see another doctor as it could change things with my 6 month testing I go through since the kidney portion was removed.

I also have high blood pressure. I take medication for my family physician and my cancer doctor are concerned because I'm told by them Covid 19 attacks the heart and kidneys. Should I contract this virus I will not stand a chance.

The statistics are showing of all who have contracted this virus 57% are men. And all who have died 62% are men. The judge at my sentencing called my 8 months a punishment, by no means should it be a death sentence.

I have never been in any type of trouble with the law in my entire life other than this. I am part of my church and have a wife I am celebrating 50 years of marriage as of April 17, 2020. I have a home to go to if I am granted to serve out the balance of my time on home confinement. I have paid my $50,000.00 fine and my $100.00 assessment before I self surrendered.

I am asking you to please grant this request so I do not contract this virus nor pass it on to some other unfortunate person. I will point out I can be picked up by my wife and daughter and get straight to my home for confinement.

5. On April 30, he was notified that his request was denied because he did not meet the minimum requirements set by the Bureau of prisons guidelines for compassionate release, which were defined to him as follows:

- The inmate must be 65 or older;

- The inmate must suffer from chronic or serious medical condition related to aging;

- The inmate must have a mental or physical health problem that diminishes his ability to function;

- Treatment promises no substantial improvement; and

- The inmate must have served at least 50% of sentence.

6. These standards mirror those which the Bureau of Prisons has set for release under 18 U.S.C. § 3582(c)(1)(A), as set forth in Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. 3582 and 4205(g) (2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf, as viewed April 30, 2020.

7. Under 18 U.S.C. § 3582(c)(1)(A)(I), this Court has the authority to modify a previously imposed sentence if it finds that "extraordinary and compelling reasons warrant such a reduction," and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

8. As explained more fully in the memorandum brief filed in support of this motion, the Court can and should find that this is such a case.

9. While the statute has a requirement that an inmate exhaust his administrative remedies, that requirement is waivable, if the Court finds that resort to such remedies would be futile, because the agency has already determined the issue, where the administrative process would be incapable of granting, or where pursuing agency review would subject the applicant to undue prejudice.

10, While defendant's submission references both Compassionate Release and the CARES Act, the fact that it was denied under the same standards which the Bureau of Prisons would apply to an application under § 3582 suggests that the Warden treated defendant's request as being under § 3582 or that any further application would be futile; furthermore, given the threat to defendant's health from further confinement, requiring him to fully exhaust administrative remedies would clearly subject him to "undue prejudice,"

11. Pursuant to L.R. 7.1, undersigned counsel has sought the concurrence of government counsel in the within motion, but concurrence was not obtained.

WHEREFORE, defendant respectfully prays that this Honorable Court enter an Order modifying his sentence by replacing the remaining term of imprisonment by an equal period of home confinement.

Respectfully submitted,

s/David F. DuMouchel  
BUTZEL LONG  
150 W. Jefferson  
Suite 900  
Detroit, MI 48226-4430  
313-225-7000  
dumouchd@butzel.com  

s/Mark J. Kriger  
LARENE & KRIGER, PLC  
1717 Penobscot Building  
645 Griswold St.  
Detroit, Michigan 48226  
(313) 967-0100  
mkriger@sbcglobal.net  

DATED: May 1, 2020

UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                     Case No. 19-cr-20316
                                         Hon. Denise Page Hood

DENNIS POMANTE,

        Defendant.
_____/

**MEMORANDUM BRIEF IN SUPPORT OF EMERGENCY MOTION
FOR COMPASSIONATE RELEASE**

**Issues presented:** Whether the Court should modify defendant's sentence by replacing the remaining term of imprisonment by an equal period of home confinement?

**Principal authorities:** 18 U. S. C. §3582; *United States v. Saad,* 2020 WL 2065476 (E. D. M. Aprs. 29, 2020).

As evidenced by its recent decision in *United States v. Saad,* 2020 WL 2065476 (E. D. M. Aprs. 29, 2020), the Court is familiar with both the legal landscape and the impact of the coronavirus pandemic on the federal prison population. Undersigned counsel believes it is unnecessary to burden this Court with the well known statistics on the effect of the pandemic particularly on the prison/jail population or with citations to the decisions where Courts throughout the country

have granted relief under 18 U. S. C. §3582 as noted in this Court's opinion in *Saad*. The latest available data from the Bureau of Prisons is as follows:

> As of 05/01/2020, there are 1842 federal inmates and 349 BOP staff who have confirmed positive test results for COVID-19 nationwide. Currently, 509 inmates and 146 staff have recovered. There have been 36 federal inmate deaths and 0 BOP staff member deaths attributed to COVID-19 disease.

United States Bureau of Prisons, Coronavirus Resource Page, https://www.bop.gov/coronavirus/, as viewed May 1, 2020.

Because of the lack of widespread testing, however, these figures doubtless understate the prevalence of the disease. Thus, for example, at the only federal institution that tested *all* inmates (FCI Terminal Island), the infection rate was more than 40% - 443 out of 1,055 inmates tested positive for the novel coronavirus. Long Beach Post, "More than 400 Terminal Island prison inmates test positive for COVID-19," https://lbpost.com/news/terminal-island-prison-coronavirus-half-400, as viewed May 1, 2020.[1] According to a Newsweek article dated, April 30, 2020, "new figures provided by the Bureau of Prisons show that out of 2,700 tests systemwide, nearly 2,000 have come back positive, strongly suggesting there are far more COVID-19 cases left

---

[1] Actually, it now appears that more than 600 inmates - some 60% of FCI Terminal Island's population - have tested positive for the novel coronavirus. Huffpost, Scarce Testing, Tight Quarters, Limited Gear: Federal Prisons Hammered By Coronavirus, https://www.huffpost.com/entry/federal-bureau-of-prisons-coronavirus_n_5eab128ec5b6c06f13105216, as viewed May 1, 2020.

uncovered." https://time.com/5829722/covid19-federal-prisons-testing/, as viewed May 2. 2020. Although it appears that the number of cases is vastly undercounted in the BOP statistics. Even under the BOP statistics, however, the number of COVID-19 cases is still increasing significantly. Between April 29, 2020 and May 1, 2020 the number of inmates that tested positive for COVID-19 increased from 1,534 to 1,842, an increase of 17% in just two days. (Exhibit 2). And the defendant Pomante is among the class of inmates most at risk from the virus.

Counsel recognize that as of today, there have been no reported cases of COVID-19 at FCI Morgantown. However, Mononglia County where FCI Morgantown is located has reported 102 cases. https://www.monchd.org/covid-19.html, as viewed May 1, 2020. Moreover, because of the lack of widespread testing, there is no guarantee that FCI Morgantown does not have any active cases and as noted above, the number of cases is in all likelihood vastly undercounted. As of April 24, 2020, only symptomatic inmates were being tested. https://www.bop.gov/resources/news/20200424_expanded_testing.jsp, as viewed May 1, 2020. As has been repeatedly publicized many of the carriers are asymptomatic.

Like the defendant in *United States v. Saad, supra,* Dennis Pomante is of advanced age (69 v. Mr. Saad's 71), and suffers from some of the same medical

3

conditions: kidney disease, hypertension, and diabetes.[2] What the Court wrote of Mr. Saad might just as aptly be said of Mr. Pomante:

> Although the sentence imposed on Defendant was just, the Court holds that the threat posed by COVID-19, in light of Defendant's age and his underlying health conditions, constitutes an "extraordinary and compelling reason" to modify his sentence under 18 U.S.C. § 3582(c)(1)(A)(I). As stated by the *Zukerman* court, "[t]he severity of [Defendant]'s conduct remains unchanged. What has changed, however, is the environment where [Defendant] is serving his sentence. When the Court sentenced [Defendant], the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic." [*United States v.*] *Zukerman*, 2020 WL 1659880, at *6 [(S. D. N. Y Apr. 3, 2020)] (citing *United States v. Rodriguez*, 2020 WL 1627331, at *12 (E.D. Pa. Apr. 1, 2020)).
>
> The United States Sentencing Commission has defined "extraordinary and compelling reasons." See U.S.S.G. § 1B1.13, comment n.1. There are extraordinary and compelling reasons for modification where "[t]he defendant is...suffering from a serious physical or medical condition...that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii).

*Id.,* at *5.

Mr. Saad sought Relief under the Cares while Mr. Pomante's request referenced both the CARES Act and Compassionate Release. Mr. Pomante's request,however, appeared to be treated at the instutional level as being submitted

---

[2] At sentencing this Court acknowledged Mr. Pomante's serious health problems when it asked whether it should "order anything special like a medical facility. . ."

4

under § 3582 and therefore did pursue his administrative remedies and his request was denied. Even if, however, this Court construes Mr. Pomante's request as submitted under the CARES Act, this Court, recognizing the urgent nature of relief requested, has previously held that the requirement that an inmate first pursue his adminstrative remedies may be waived. In *United States v. Saad, supra,* the Court wrote: "The Court concludes that requiring him to exhaust administrative remedies, given his unique circumstances and the exigency of a rapidly advancing pandemic, would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate." *Id.,* at \*3. The same may be said here, with the additional indicator of futility that Mr. Pomante's request was denied on the basis of the same standards which the Bureau of Prisons would apply to a request under 18 U.S.C. § 3582.

Defendant asks for precisely the same relief as the Court saw fit to grant in *Saad* - not a sentence reduction, but rather a modification, by replacing the remaining term of imprisonment by an equal period of home confinement.

Respectfully submitted,

| | |
|---|---|
| s/David F. DuMouchel | s/Mark J. Kriger |
| BUTZEL LONG | LARENE & KRIGER, PLC |
| 150 W. Jefferson | 1717 Penobscot Building |
| Suite 900 | 645 Griswold St. |
| Detroit, MI 48226-4430 | Detroit, Michigan 48226 |
| 313-225-7000 | (313) 967-0100 |
| dumouchd@butzel.com | mkriger@sbcglobal.net |

DATED: May 2, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2020 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

s/ Mark J. Kriger
LaRene & Kriger, P.L.C.
1717 Penobscot Building
Detroit, Michigan 48226
(313) 967-0100
E-mail: mkriger@sbcglobal.net
Michigan Bar No. 30298