UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                       Case No. 18-cr-20668
                                           Hon. George Caram Steeh

D-2 VICTOR ATTISHA,

        Defendant.
_____/

**EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

NOW COMES VICTOR ATTISHA, defendant herein, by and through his attorney, Mark J. Kriger, and moves this Honorable Court for the entry of an Order reducing his sentence in such a way as to require his immediate release from prison, and in support of said motion says as follows:

1. He is the defendant in the above-captioned cause, convicted upon his plea of guilty to the charge of Conspiracy to Manufacture, Possess with Intent to Distribute, and Distribute Marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), and sentenced on November 6, 2019, to a term of 60 months imprisonment, to be followed by a term of supervised release of four years.

2. He duly surrendered the Federal Correctional Institution at Morgantown, West Virginia, and is now housed there, under Register No. 76323-198.

3. Defendant has pre-existing medical conditions which place him at great risk of both contracting and suffering the most severe consequences of COVID-19; specifically, obstructive sleep apnea and obesity, as attested to by the letters from his physicians, attached hereto as Exhibit One, and as documented in the Presentence Investigative Report.

4. In addition, while incarcerated, and during exercise intended to help him lose weight, he injured his knee, which prison medical personnel have treated with prednisone, a drug which also places him at high risk for COVID-19. (Counsel is in the process of attempting to obtain medical records to further document this injury and treatment.)

5. Under 18 U.S.C. § 3582(c)(1)(A)(I), this Court has the authority to modify a previously imposed sentence if it finds that "extraordinary and compelling reasons warrant such a reduction," and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

6. As explained more fully in the memorandum brief filed in support of this motion, the Court can and should find that this is such a case.

7. On April 23, 2020, defendant sent a request to the Warden at FCI Morgantown requesting that the Bureau of Prisons file a Motion for a Reduction of Sentence under 18 U.S.C. § 3582(c)(1)(A)(I) but has not yet received a response.

7. While the statute has a requirement that an inmate exhaust his administrative remedies, that requirement is waivable, if the Court finds that resort to such remedies would be futile, because the agency has already determined the issue, where the administrative process would be incapable of granting, or where pursuing agency review would subject the applicant to undue prejudice, and, as further explained in the supporting memorandum brief, the Court should find that this is the case here.

8. Pursuant to L.R. 7.1, undersigned counsel has sought the concurrence of government counsel in the within motion, but concurrence was not obtained.

WHEREFORE, defendant respectfully prays that this Honorable Court enter an Order modifying his sentence so as to grant him immediate release from prison and require him to serve such a period of home confinement that this Court deems appropriate.

        Respectfully submitted,

        s/Mark J. Kriger
        LaRene & Kriger, PLC
        1717 Penobscot Building
        645 Griswold St.
        Detroit, Michigan 48226
        (313) 967-0100
        mkriger@sbcglobal.net

DATED: May 7, 2020

UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                      Case No. 18-cr-20668
                                        Hon. George Caram Steeh

D-2 VICTOR ATTISHA,

        Defendant.
_____/

## MEMORANDUM BRIEF IN SUPPORT OF EMERGENCY MOTION FOR COMPASSIONATE RELEASE

**Issues presented:** Whether the Court should modify defendant's sentence by replacing the remaining term of imprisonment by an equal period of home confinement?

**Principal authorities:** 18 U. S. C. §3582; *United States v. Saad,* 2020 WL 2065476 (E. D. Mich. 2020).

Undoubtedly, the Court is familiar with both the legal landscape and the impact of the coronavirus pandemic on the federal prison population. In an excess of caution, however, it seems appropriate to underscore some of the fundamentals.

The latest available data from the Bureau of Prisons is as follows:

As of 05/05/2020, there are 2066 federal inmates and 359 BOP staff who have confirmed positive test results for COVID-19 nationwide. Currently, 561 inmates and 149 staff have recovered. There have been

> 41 federal inmate deaths and 0 BOP staff member deaths attributed to COVID-19 disease.

United States Bureau of Prisons, Coronavirus Resource Page, https://www.bop.gov/coronavirus/, as viewed May 6, 2020.

However, because of the lack of widespread testing, these figures doubtless understate the prevalence of the disease. Thus, for example, at the only federal institution that tested *all* inmates (FCI Terminal Island), the infection rate was more than 40% - 443 out of 1,055 inmates tested positive for the novel coronavirus. Long Beach Post, "More than 400 Terminal Island prison inmates test positive for COVID-19," https://lbpost.com/news/terminal-island-prison-coronavirus-half-400, as viewed May 1, 2020.[1] According to a Time article dated, April 30, 2020, "new figures provided by the Bureau of Prisons show that out of 2,700 tests systemwide, nearly 2,000 have come back positive, strongly suggesting there are far more COVID-19 cases left uncovered." https://time.com/5829722/covid19-federal-prisons-testing/, as viewed May 2. 2020. Although it appears that the number of cases is vastly undercounted in the BOP statistics. Even under the BOP statistics, however, the number of COVID-19 cases is still increasing significantly. Between April 29, 2020 and May 5, 2020 the number

---

[1] Actually, it now appears that more than 600 inmates - some 60% of FCI Terminal Island's population - have tested positive for the novel coronavirus. Huffpost, Scarce Testing, Tight Quarters, Limited Gear: Federal Prisons Hammered By Coronavirus, https://www.huffpost.com/entry/federal-bureau-of-prisons-coronavirus_n_5eab128ec5b6c06f13105216, as viewed May 1, 2020.

of inmates that tested positive for COVID-19 increased from 1,534 to 2066, an increase of almost 35% in less than a week. (Exhibit 2). And the defendant Attisha is among the class of inmates most at risk from the virus.

In a letter included in Exhibit One to the Motion in support of which this memorandum is written, Dr. Arthur Rosner writes:

> Mr. Victor Attisha has been a patient at my practice since 2016. I have diagnosed him with having obstructive sleep apnea and requires CPAP (Continuous Positive Airway Pressure) therapy via the use of a CPAP machine.
> Obstructive sleep apnea is considered to be an underlying, chronic health condition. Patients such as Mr. Victor Attisha, with obstructive sleep apnea, and those who utilize CPAP machines, are at higher risk for COVID-19. Obstructive sleep apnea has been linked to other conditions, such as heart disease and diabetes, which means these patients are included in the higher risk category.

In addition, the other letter in Exhibit One, from Dr. Musib S. Gappy, states: "Mr. Attisha is a patient of mine who has obesity with Obstructive Sleep Apnea. He is more of a vulnerable patient if he is exposed to COVID-19 infection." And paragraphs 58-60 of the Presentence Investigation Report confirm both the diagnosis of sleep apnea and Mr. Attisha's obesity, giving his height as 5'7" and his weight as 280 pounds.

Courts considering applications for compassionate release under 18 U.S.C. § 3582(c)(1)(a) have recognized both sleep apnea and obesity as conditions which

significantly increase the risks to prisoners from COVID-19. *See, e.g., United States v. Saad,* 2020 WL 2065476, *6 (E. D. Mich.. 29, 2020), *United States v. Vigna*, 2020 WL 1900495, *4 (S. D. N.Y. 2020); *United States v. Daugerdas*, 2020 WL 2097653, *3 (S. D. N. Y. 2020).

Ironically, Mr. Attisha's post-incarceration efforts at mitigating one of those conditions has instead added yet another risk factor. During exercise intended to help him lose weight, he injured his knee, which prison medical personnel have treated with prednisone, a drug which also places him at high risk for COVID-19, as a recent article published in the Endocrine Society's Journal of Clinical Endocrinology & Metabolism, has shown. U. B. Kaiser, R. G. Mirmira, P. M. Stewart, Our Response to COVID-19 as Endocrinologists and Diabetologists, The Journal of Clinical Endocrinology & Metabolism, Volume 105, Issue 5, May 2020, https://academic.oup.com/jcem/article/105/5/dgaa148/5814115, as viewed May 5, 2020.

The Court's authority to grant "compassionate release" is governed by 18 U.S.C. § 3582(c)(1)(A), which, as amended by the First Step Act of 2018, provides in pertinent part as follows:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that--

**(1)** in any case--

**(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

>   **(I)** extraordinary and compelling reasons warrant such a reduction;

* * *

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In *United States v. Saad, supra,* Chief Judge Hood of this Court granted compassionate relief to an older man with underlying medical conditions which, like Mr. Attisha, put him at a significantly increased risk of COVID-19. Although Mr. Attisha is not of advanced age, much of what Judge Hood said of Mr. Saad's circumstance might just as aptly be said of Mr. Attisha's:

>   Although the sentence imposed on Defendant was just, the Court holds that the threat posed by COVID-19, in light of Defendant's age and his underlying health conditions, constitutes an "extraordinary and compelling reason" to modify his sentence under 18 U.S.C. § 3582(c)(1)(A)(I). As stated by the *Zukerman* court, "[t]he severity of [Defendant]'s conduct remains unchanged. What has changed, however,

is the environment where [Defendant] is serving his sentence. When the Court sentenced [Defendant], the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic." [*United States v.*] *Zukerman*, 2020 WL 1659880, at *6 [(S. D. N. Y Apr. 3, 2020)] (citing *United States v. Rodriguez*, 2020 WL 1627331, at *12 (E.D. Pa. Apr. 1, 2020)).

The United States Sentencing Commission has defined "extraordinary and compelling reasons." See U.S.S.G. § 1B1.13, comment n.1. There are extraordinary and compelling reasons for modification where "[t]he defendant is...suffering from a serious physical or medical condition...that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii).

*Id.,* at *5.

In *Saad,* Judge Hood collected cases holding compassionate release appropriate due to the defendant's heightened risk of contracting COVID-19 based on underlying medical conditions:

This Court and others have held that compassionate release is justified under such conditions. *United States v. Doshi*, No. 13-20349, ECF No. 145 (E.D. Mich. Mar. 31, 2020) (recommending that the BOP release 64 year old defendant with diabetes and hypertension to home confinement); *Perez*, 2020 WL 1546422, at *4 (the defendant was at risk of experiencing serious complications from COVID-19 due to medical complications arising from two vicious beatings while he was incarcerated); *Colvin*, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (finding "extraordinary and compelling reasons justifying...immediate release under Section 3582(c)(1)(A) and U.S.S.G. § 1B1.13" where defendant has "diabetes, a serious medical condition which substantially increases her risk of severe illness if she contracts COVID-19" (internal quotation marks, citation, and alteration omitted)); *Rodriguez*, 2020 WL

6

1627331, at *7 (granting compassionate release where defendant was "in the higher risk category for developing more serious disease" if exposed to COVID-19 because he "has Type 2 diabetes mellitus with diabetic neuropathy, essential hypertension, obesity, and abnormal liver enzymes in a pattern most consistent with non-alcoholic fatty liver disease") (internal quotation marks and citations omitted); *United States v. Jepsen*, 19 Civ. 73, 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020) (granting compassionate release to defendant who "is immunocompromised and suffers from multiple chronic conditions that are in flux and predispose him to potentially lethal complications if he contracts COVID-19"); *United States v. Gonzalez*, No. 18 Cr. 1536155, 2020 WL 1536155, at *3 (approving compassionate release where defendant "is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable"); *United States v. Muniz*, 09 Cr. 199, 2020 WL 1540325, at *2 (finding extraordinary and compelling circumstances because "[d]efendant has been diagnosed with serious medical conditions that, according to reports from the Center[s] for Disease Control, make him particularly vulnerable to severe illness from COVID-19...includ[ing] inter alia, end stage renal disease, diabetes, and arterial hypertension."); *United States v. Campagna*, No. 16 Cr. 78-01, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (approving compassionate release for defendant where his "compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify [d]efendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care").

*Id.,* at *6.

As noted above, defendants conditions place him in a higher risk category.

As to the 3553(a) factors, undersigned counsel previously submitted a sentencing memorandum setting forth the factors and the applicability of those factors

7

to defendant and incorporates that memorandum by reference.[2] Based on those factors, undersigned counsel argued that but for the mandatory minimum a sentence of less than five years was sufficient but not greater than necessary to satisfy the 3553(a) factors. Unfortunately, defendant was not eligible for a reduction under the safety valve provision, 18 U.S.C. §3553(e), because of a 19 year old conviction for an offense the defendant committed when he was 22 years old.

Mr. Shammas, one of Mr. Attisha's co-defendants, who was safety valve eligible and pled guilty to both money laundering and Conspiracy to Distribute Marijuana, received a sentence of 21 months. Although this Court was required to impose the mandatory minimum the time of sentencing, this Court is no longer bound by the mandatory minimum where a defendant is eligible for a modification of sentence under 18 U.S.C. § 3582(c)(1)(A). See *United States v. Bess,* 2020 WL 1940809, at *6 (W.D.N.Y. Apr. 22, 2020) ("this Court finds no indication in the text of section 3582(c)(1)(A) that courts are limited to offering compassionate release only to those inmates who have satisfied their statutory-minimum terms of incarceration. Instead, the statue broadly authorizes courts to 'reduce the term of imprisonment,'

---

[2] Undersigned counsel pointed to among other things, defendant's long history of employment, how he cared for his brother who suffers from a severe traumatic brain injury, his devotion to his wife and children, and that recreational marijuana is now legal in Michigan.

adding only that the court also 'may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment.' 18 U.S.C. § 3582(c)(1)(A)."). *See also, United States v. Yahoshua Ben-Yhwh*, 2020 WL 1874125, at *7 (D. Haw. Apr. 13, 2020); *United States v. Rodriguez*, 2020 WL 1627331, at *12 (E.D. Pa. Apr. 1, 2020); *United States v. Schmitt*, 2020 WL 96904, at *6 (N.D. Iowa Jan. 8, 2020).

To be sure, §3582(c)(1)(a) contains a requirement that a movant first exhaust his administrative remedies. However, it seems clear that the exhaustion requirement is waivable, as was explained in *United States v. Zukerman,* 2020 WL 1659880, at *2–3 (S.D.N.Y. 2020) cited by Judge Hood in *Saad*:

> Section 3582(c)(1)(A) imposes "a statutory exhaustion requirement" that "must be strictly enforced." *United States v. Monzon*, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing *Theodoropoulos v. I.N.S*., 358 F.3d 162, 172 (2d Cir. 2004) (internal quotation marks and alterations omitted)). However, as this Court and others have held, the requirement of completing the administrative process may be waived "if one of the recognized exceptions to exhaustion applies." *United States v. Perez*, No. 17 Cr. 513-3, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020); see *United States v. Colvin*, No. 19 Cr. 179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) ("[I]n light of the urgency of [d]efendant's request, the likelihood that she cannot exhaust her administrative appeals during her remaining eleven days of imprisonment, and the potential for serious health consequences, the [c]ourt waives the exhaustion requirement of Section 3582(c)(1)(A)."); *United States v. Powell*, 94 Cr. 316, ECF No. 98 (D.D.C. Mar. 28, 2020) (waiving exhaustion under § 3582(c)(1)(A) where the [c]ourt found that

9

"requiring defendant to first seek relief through the [BOP] administrative process would be futile").

"Even where exhaustion is seemingly mandated by statute ..., the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) (citing *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992)).2 There are three circumstances where failure to exhaust may be excused. "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." *Id*. Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief." *Id*. at 119. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." Id.

All three of these exceptions apply here. "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile. Moreover, the relief the agency might provide could, because of undue delay, become inadequate. Finally, and obviously, [Zukerman] could be unduly prejudiced by such delay." *Washington*, 925 F.3d at 120–21; see *Bowen v. City of New York*, 476 U.S. 467, 483 (1986) (holding that irreparable injury justifying the waiver of exhaustion requirements exists where "the ordeal of having to go through the administrative process may trigger a severe medical setback" (internal quotation marks, citation, and alterations omitted)); *Abbey v. Sullivan*, 978 F.2d 37, 46 (2d Cir. 1992) ("[I]f the delay attending exhaustion would subject claimants to deteriorating health, ... then waiver may be appropriate."); *New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990) (holding that waiver was appropriate where "enforcement of the exhaustion requirement would cause the claimants irreparable injury" by risking "deteriorating health, and possibly even ... death"); see also P*erez,* 2020 WL 1546422, at *2–3 (holding that § 3582(c)(1)(A)'s exhaustion requirement could be waived where delay carried the risk of the vulnerable defendant contracting COVID-19). Here, even a few weeks' delay carries the risk of catastrophic health consequences for Zukerman. The Court concludes that requiring him to exhaust administrative remedies, given his unique circumstances and the

10

exigency of a rapidly advancing pandemic, would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate.

Community health experts have noted an unsettling trend: as community-based solutions like stay at home orders and social distancing have slowed the spread of the pandemic in the free world, the opposite has been true in institutions like prisons - as "they have seen less COVID in the community in general, and a shift into nursing homes, jails and some large workplaces." MLive, "Six weeks into extreme social distancing, how are Michiganders still catching coronavirus?" https://www.mlive.com/public-interest/2020/05/six-weeks-into-extreme-social-distancing-how-are-michiganders-still-catching-coronavirus.html, as viewed May 6, 2020. For this reason, and for the reasons stated above, the Court should act quickly to exercise its discretion under § 3582(c)(1)(a) in such a way as to remove Mr. Attisha from a prison environment of increasing danger, a species of danger to which he is particularly susceptible.

Counsel recognizes that as of today, there have been no confirmed cases of COVID-19 at FCI Morgantown. However, because of the lack of widespread testing, there is no guarantee that FCI Morgantown does not have actually any active cases, even if they are asymptomatic. As of April 24, 2020, only symptomatic inmates were being tested, https://www.bop.gov/resources/news/20200424_expanded_testing.jsp,

11

as viewed May 1, 2020, and, as has been repeatedly publicized, many carriers are asymptomatic.

As Judge Levy of this Court pointed out in her opinion granting compassionate release in *United States v. Amarrah,* Case No. 5:17-cr-20464, R.E. 196, Page ID # 4584-4585 (May 7, 2020):

> Zero *confirmed* COVID-19 cases is not the same thing as zero COVID-19 cases. The Bureau of Prisons recently discovered this when it found that 70 percent of the inmates it tested were positive for the disease. See Sadie Gurman, More Than 70% of Inmates Tested in Federal Prisons Have Coronavirus, The Wall Street Journal (Apr. 30, 2020),(noting that "prison officials expect [this number] to rise as they expand testing with a focus on the hardest-hit facilities"). The Southeast Regional Vice President of the Council of Prison Locals referred to "the inside of a[ prison] institution"as a "little petri dish . . . a life and death situation [that prison officials then take] home to our families." Id. This disease spreads asymptomatically, which means the Court and the prison system can take no comfort in a lack of confirmed cases, and all parties should be deeply concerned by the lack of universal testing of inmates and staff. *See* How COVID-19 Spreads, CDC (Apr. 3, 2020) (http references omitted).

In modifying defendant's sentence, the Court need not grant him his complete freedom; it may modify his sentence in such a way as to substitute home confinement, under such restrictions and conditions as it deems appropriate, for some or all of the remainder of his remaining term. The important thing, of course, is to remove him from a setting which threatens his life every day.

as viewed May 1, 2020, and, as has been repeatedly publicized, many carriers are asymptomatic.

As Judge Levy of this Court pointed out in her opinion granting compassionate release in *United States v. Amarrah,* Case No. 5:17-cr-20464, R.E. 196, Page ID # 4584-4585 (May 7, 2020):

> Zero *confirmed* COVID-19 cases is not the same thing as zero COVID-19 cases. The Bureau of Prisons recently discovered this when it found that 70 percent of the inmates it tested were positive for the disease. See Sadie Gurman, More Than 70% of Inmates Tested in Federal Prisons Have Coronavirus, The Wall Street Journal (Apr. 30, 2020),(noting that "prison officials expect [this number] to rise as they expand testing with a focus on the hardest-hit facilities"). The Southeast Regional Vice President of the Council of Prison Locals referred to "the inside of a[ prison] institution"as a "little petri dish . . . a life and death situation [that prison officials then take] home to our families." Id. This disease spreads asymptomatically, which means the Court and the prison system can take no comfort in a lack of confirmed cases, and all parties should be deeply concerned by the lack of universal testing of inmates and staff. *See* How COVID-19 Spreads, CDC (Apr. 3, 2020) (http references omitted).

In modifying defendant's sentence, the Court need not grant him his complete freedom; it may modify his sentence in such a way as to substitute home confinement, under such restrictions and conditions as it deems appropriate, for some or all of the remainder of his remaining term. The important thing, of course, is to remove him from a setting which threatens his life every day.

        Respectfully submitted,

        s/Mark J. Kriger
        LaRene & Kriger, PLC
        1717 Penobscot Building
        645 Griswold St.
        Detroit, Michigan 48226
        (313) 967-0100
        mkriger@sbcglobal.net

DATED: May 7, 2020

13

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2020 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

s/ Mark J. Kriger
LaRene & Kriger, P.L.C.
1717 Penobscot Building
Detroit, Michigan 48226
(313) 967-0100
E-mail: mkriger@sbcglobal.net
Michigan Bar No. 30298