# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                                        Case No. 19-20316
                                               HON. DENISE PAGE HOOD

v.

DENNIS POMANTE,

      Defendant.
_____/

## ORDER GRANTING DEFENDANT'S
## EMERGENCY MOTION FOR IMMEDIATE REDUCTION OF
## SENTENCE (COMPASSIONATE RELEASE) [#25]

## I.    INTRODUCTION

Defendant Dennis Pomante has filed an Emergency Motion for Compassionate Release. [ECF No. 25] Defendant specifically requests that the Court replace his remaining term of imprisonment by an equal period of home confinement [*Id.*], pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A)(I). Defendant asks the Court to modify his term of imprisonment (12 months) to impose a special condition that he serve a period of home confinement on supervised release. Defendant's projected release date is March 2, 2021. [ECF No. 27, Pg. ID 233]

## II.    BACKGROUND

Defendant was sentenced on December 19, 2019, to serve 12 months in custody and two years of supervised release on Count I of the Indictment, Wire Fraud Conspiracy, in violation of 18 U.S.C. § 371, a non-violent offense. Defendant fraudulently obtained nearly $107 million in government set-aside contracts from June 2005 to June 2013. Based upon the estimated "gain" from his fraudulent scheme,

Defendant's sentencing guidelines were 24-30 months. Using its discretion, the Court considered Defendant's status as a first-time offender, age and health condition, among other factors, and granted Defendant a downward variance at sentencing.

Defendant is 69 years old, is housed at the Bureau of Prison's ("BOP") FCI Morgantown facility in West Virginia, and has served approximately 2 months out of his 12-month custodial sentence. Defendant suffers from serious underlying and pre-existing medical conditions, including, but not limited to, chronic kidney disease resulting from a 2016 bout with kidney cancer, hypertension, obesity, and diabetes. Defendant contends that this combination of conditions places him in the COVID-19 highest-risk category.

On March 30, 2020, Defendant sent a letter to FCI Morgantown's warden. [ECF No. 25, Pg.ID 211] FCI Morgantown denied Defendant's request stating that he did not satisfy the criteria for compassionate release. [*Id.* at 212] In its communication to Defendant, FCI Morgantown explained that eligible prisoners must: (1) be 65 years or older; (2) suffer from a chronic or serious medical condition(s); (3) have a mental or physical health problem that diminishes his ability to function; (4) have no possible treatment regiments that offer substantial improvement; and (5) have served at least 50% of his sentence. [*Id.*]

## III.   LEGAL ANALYSIS

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved

2

portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i) therefore requires that a defendant must satisfy both the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence.

### A. Exhaustion

The Government asserts that Defendant does not qualify for compassionate release because he has not exhausted his efforts for compassionate release from the BOP, as required under 18 U.S.C. § 3582(c)(1)(A). The Government argues that Defendant "must at least ask the Bureau of Prisons[]" to fulfill his request and "give BOP thirty days to respond." *United States v. Raia*, 954 F.3d 594, 596-97 (3d Cir. 2020) (opinion amended on Apr. 8, 2020). The Government states that, for that reason, the Court does not have jurisdiction to address Defendant's COVID-19 argument. The Court acknowledges that a number of courts have denied applications for sentence modification under 18 U.S.C. § 3582(c)(1)(A) brought on the basis of the risk posed by COVID-19, citing the fact that the defendant failed to exhaust administrative remedies. *See, e.g.*, *United States v. Alam*, case No. 15-20351, 2020 WL 1703881, at *2 (E.D. Mich. Apr. 8, 2020) (Cox, J.) (quoting *Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016)) (denying a motion for compassionate release due to the COVID-19 outbreak for failure to exhaust) (also citing many cases from across the country holding the same).

Defendant argues that the exhaustion requirement may be waived when it would be futile, either because agency decision makers have already determined the issue or are biased. *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). Defendant further asserts that given Defendant's current health condition, proceeding with the exhaustion requirement would result in "undue prejudice." *Id.*; *see also United States v. Zukerman*, 2020 WL 1658880, at *3-4 (S.D.N.Y., April 3, 2020).

For the reasons that follow, the Court holds that, due to the unique and unforeseen threat posed by the COVID-19 pandemic to this Defendant because of his specific health conditions, the exhaustion of administrative process can be waived.

The Court notes the following language from *Zukerman*:

Section 3582(c)(1)(A) imposes "a statutory exhaustion requirement" that "must be strictly enforced." *United States v. Monzon*, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing *Theodoropoulos v. I.N.S.*, 358 F.3d 162, 172 (2d Cir. 2004) (internal quotation marks and alterations omitted)). However, as this Court and others have held, the requirement of completing the administrative process may be waived "if one of the recognized exceptions to exhaustion applies." *United States v. Perez*, No. 17 Cr. 513-3, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020); *see United States v. Colvin*, No. 19 Cr. 179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) ("[I]n light of the urgency of [d]efendant's request, the likelihood that she cannot exhaust her administrative appeals during her remaining eleven days of imprisonment, and the potential for serious health consequences, the [c]ourt waives the exhaustion

requirement of Section 3582(c)(1)(A)."); *United States v. Powell*, 94 Cr. 316, ECF No. 98 (D.D.C. Mar. 28, 2020) (waiving exhaustion under § 3582(c)(1)(A) where the [c]ourt found that "requiring defendant to first seek relief through the [BOP] administrative process would be futile").

"Even where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) (citing *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992)).[] There are three circumstances where failure to exhaust may be excused. "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." *Id.* Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief." *Id.* at 119. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." *Id.*

All three of these exceptions apply here. "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile. Moreover, the relief the agency might provide could, because of undue delay, become inadequate. Finally, and obviously, [Zukerman] could be unduly prejudiced by such delay." *Washington*, 925 F.3d at 120–21; *see Bowen v. City of New York*, 476 U.S. 467, 483 (1986) (holding that irreparable injury justifying the waiver of exhaustion requirements exists where "the ordeal of having to go through the administrative process may trigger a severe medical setback" (internal quotation marks, citation, and alterations omitted)); *Abbey v. Sullivan*, 978 F.2d 37, 46 (2d Cir. 1992) ("[I]f the delay attending exhaustion would subject claimants to deteriorating health, . . . then waiver may be appropriate."); *New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990) (holding that waiver was appropriate where "enforcement of the exhaustion requirement would cause the claimants irreparable injury" by risking "deteriorating health, and possibly even ... death"); *see also Perez*, 2020 WL 1546422, at *2–3 (holding that § 3582(c)(1)(A)'s exhaustion requirement could be waived where delay carried the risk of the vulnerable defendant contracting COVID-19). Here, even a few weeks' delay carries the risk of catastrophic health consequences for

Zukerman. The Court concludes that requiring him to exhaust administrative remedies, given his unique circumstances and the exigency of a rapidly advancing pandemic, would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate.

To be sure, "the policies favoring exhaustion are most strongly implicated" by challenges to the application of existing regulations to particular individuals. *Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996) (internal quotation marks, citation, and alterations omitted). Ordinarily, requests for a sentence reduction under § 3582(c) would fall squarely into that category. But "courts should be flexible in determining whether exhaustion should be excused," *id.* at 151, and "[t]he ultimate decision of whether to waive exhaustion . . . should also be guided by the policies underlying the exhaustion requirement." *Bowen*, 476 U.S. at 484. The provision allowing defendants to bring motions under § 3582(c) was added by the First Step Act, in order to "increas[e] the use and transparency of compassionate release." 132 Stat. 5239. Requiring exhaustion generally furthers that purpose, because the BOP is best situated to understand an inmate's health and circumstances relative to the rest of the prison population and identify "extraordinary and compelling reasons" for release. 18 U.S.C. § 3582(c)(1)(A)(i). In Zukerman's case, however, administrative exhaustion would defeat, not further, the policies underlying § 3582(c).

*Zukerman*, 2020 WL 1659880, at **2–3 (footnotes omitted).

The Court finds that there are several factors that weigh in favor of Defendant's release from FCI Morgantown. Defendant is 69 years old and, most significantly, suffers from chronic kidney disease, hypertension, and diabetes. Pursuant to the COVID-19 pandemic, it appears to the Court that Defendant's age and health condition places him in the "highest risk category for complications and death from the disease if infected." *See, e.g.*, *Zukerman*, 2020 WL 1659880, at *4;

*Basank v. Decker*, 2020 WL 1481503, at *3 (S.D.N.Y. Mar. 26, 2020) ("The Court takes judicial notice that, for people of advanced age, with underlying health problems, COVID-19 causes severe medical conditions and has increased lethality.") (citation omitted).

Even if the Court were to accept the argument that the BOP and FCI Morgantown are taking precautions to ensure the safety of prisoners, Defendant's risk of contracting COVID-19 is not speculative. Until the BOP increases its testing capacity, a lack of confirmed cases has very little bearing on the amount of actual cases in a federal prison. *See* Sadie Gurman, *More Than 70% of Inmates Tested in Federal Prisons Have Coronavirus*, The Wall Street Journal (Apr. 30, 2020), https://www.wsj.com/articles/more-than-70-of-inmates-tested-in-federalprisons-have-coronavirus-11588252023 (explaining that the BOP expects confirmed cases to increase as it increases testing).

As of May 14, 2020, there were 114 confirmed cases of COVID-19 in Monongalia County—the county where FCI Morgantown is located. *See* COVID-19, monchd.org, https://www.monchd.org/covid-19.html. The Court notes that absent zero cases in Monongalia County the prison is still at risk of exposing inmates. *See* Pien Huang, *What We Know About the Silent Spreaders of COVID-19*, NPR (Apr. 13, 2020, 4:43 PM), https://www.npr.org/sections/goatsandsoda/2020/04/13/831883560/can-a-

coronavirus-patient-who-isnt-showing-symptoms-infect-others (explaining that

people without symptoms can—and have—spread the virus). Presumably, many of

FCI Morgantown's staff live in Monongalia County and may have been exposed to

COVID-19. *Id.* The Court is also persuaded by Defendant's assertion that the

number of cases in federal prisons has the potential to fluctuate rapidly. *See* [ECF

No. 25-3] ("Between April 29, 2020 and May 1, 2020 the number of inmates that

tested positive for COVID-19 increased from1,534 to 1,842, an increase of 17% in

just two days.") (Exhibit 2).

  The Court is cognizant that most of Defendant's health conditions existed

prior to sentencing [ECF No. 23, Pg.ID 201] ("[The Court] will ask that you be

sent to a medical facility. I'm not sure how many times you have these tests done,

but if you want to do that, I'll be happy to do that.") (Sentencing Transcript). The

Court is also cognizant that Defendant has only served two months of his 12-month

term, but it cannot ignore that the threat of COVID-19 exists now. As set forth

above, Defendant (a) has serious known underlying illnesses — and has had

kidney complications since recovering from kidney cancer; (b) is detained in a

facility where, given the lack of testing, there may be unreported cases; and (c) like

other inmates, Defendant is unable to take adequate measures to protect himself.

The Court holds that Defendant's age, serious health conditions, and high risk of contracting COVID-19 at a federal prison justify waiving the exhaustion requirement.

## B. Extraordinary and Compelling Reasons

The Government argues that Defendant is ineligible for the relief he requested because he has not established that he is less safe at FCI Morgantown than he would be at home in Shelby Township, Michigan. *See* COVID-19, Federal Bureau of Prison, https://www.bop.gov/coronavirus/index.jsp (there are currently no confirmed cases of COVID-19 at FCI Morgantown); *see also United States v. Feiling*, 2020 WL 1821457, at *8 (E.D. Va. Apr. 10, 2020) (explaining that a 71-year-old defendant who suffers from a variety of ailments putting him at risk of an adverse outcome from COVID-19, failed to show a greater risk of contracting the disease in prison, in relation to his risk in the community).

Citing the Sentencing Commission's policy statement USSG § 1B1.13, the Government argues that the criteria for home confinement is unambiguous and that Defendant does not qualify. The Commission's policy statement limits "extraordinary and compelling reasons" to four categories: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons." USSG § 1B1.13 cmt. n.1. Unless an inmate's circumstances fall within those categories,

he is not eligible for compassionate release. 18 U.S.C. § 3582(c)(1)(A); *United States v. Saldana*, 2020 WL 1486892, at *3 (10th Cir. Mar. 26, 2020). The Government further asserts that releasing Defendant to home confinement is inconsistent with the factors contained in 18 U.S.C. § 3553(a).

The Court acknowledges the Government's arguments and the severity of Defendant's crime, but ultimately finds that the COVID-19 pandemic as applied to this individual Defendant presents compelling and extraordinary reasons for home confinement. The Government uses *Saldana* to argue that the Court does not have authority to expand the eligibility criteria for compassionate release. The Government states that USSG § 1B1.13 cmt. n.1(A)(ii) defines an applicable medical condition as a "serious physical or medical condition . . . that substantially diminishe[s] the ability of the defendant to provide self-care within the environment of the correctional facility." The Government then claims that there is "no suggestion that Pomante's medical condition approaches this severity." [ECF No. 27, Pg.ID 243] However, the Government did not explain that one of the most effective methods for preventing the transmission of COVID-19 is social distancing. The Center for Disease Control ("CDC") indicates that COVID-19 is mostly spread via respiratory droplets among close contacts[1] and through contact with

---

[1] Close contact is defined as: (a) being within approximately 6 feet (2 meters) of a COVID-19 carrier for a prolonged period of time. Close contact can occur between inmates while sharing a cell/pod or communal area such as a dining or bathing area with a COVID-19 carrier; or (b) having direct contact with infectious secretions of a COVID-19 carrier (*e.g.*, being coughed on).

contaminated surfaces or objects. To reduce the spread of the virus, social distancing measures have been recommended by the CDC and implemented by states across the nation.[2]

The Court finds that Defendant's condition is serious and the inability to effectively practice social distancing in prison diminishes Defendant's ability to "provide self-care" for his medical conditions. *See* Walter Pavlo, *Will Cell Phones be the Downfall of Prisons*, Forbes (Apr. 19, 2020, 12:11 PM), https://www.forbes.com/sites/walterpavlo/2020/04/19/will-cell-phones-be-the-downfall-of-prisons/#32c37f621be4 (describing the close living quarters present at another federal prison, FCI Fort Dix).

The Court is also persuaded by Defendant's cited case, *United States v. Sawicz*, 2020 WL 18151*2 (E.D.N.Y. April 10, 2020). In *Sawicz*, the court found that the defendant's hypertension made him particularly vulnerable to COVID-19 and met the definition of "extraordinary and compelling reasons." *Id.*; *see also United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) (concluding that the district court may make an "independent assessment" of whether extraordinary and compelling reasons exist).

Although the Government cites *Saldana* to argue that Defendant does not fit the criteria for release, the Government fails to also include *Saldana's* language

---

[2] https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-shelters/planprepareprespond.html and https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-522626--,00.html.

explaining that the BOP's list for "other reasons" is nonexclusive. *Saldana*, 2020 WL 1486892, at *2. The Government claims that COVID-19 should not alter the Court's analysis. To support this point, the Government cites the Third Circuit in *United States v. Raia*, F.3d at 597(finding that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread").

The Court acknowledges that COVID-19 alone cannot allow the release of all prisoners who request relief, but a defendant who meets the medical conditions category combined with a valid threat of contracting COVID-19 may qualify for relief. Here, Defendant does. Defendant has shown that the risk of serious illness or death that he faces in prison constitutes an extraordinary and compelling reason in favor of his release.

Defendant also analogizes to this Court's Opinion in *United States v. Saad*, No. 16-20197, 2020 WL 2065476 (EDMI April 29, 2020). Defendant asserts that he too is older than 65 years of age and suffers from serious medical ailments that would justify the relief requested.

In Response, the Government argues that Defendant's situation is distinguishable from *Saad's*. The Government contends that in *Saad*, the defendant's ("Mr. Saad") cancer affliction, which went untreated, created a more serious medical condition. The Government further indicates that Mr. Saad resided at FCI Milan— a federal facility that has experienced a major outbreak of COVID-19—and had been "*directly exposed*" to COVID-19 after his cellmate tested positive. [ECF No. 27, Pg.ID 231] (emphasis in original). The Government further seeks to distinguish the two cases by emphasizing that Mr. Saad had already served 34 months out of a 72-month sentence. [*Id.*]

Although the Government draws valid distinctions between *Saad* and the instant case, the Court finds the present similarities are sufficient to warrant relief. Although Defendant's sentence was just, the Court holds that the threat posed by COVID-19, in light of Defendant's age and his underlying health conditions, constitutes an "extraordinary and compelling reason" to modify his sentence under 18 U.S.C. § 3582(c)(1)(A)(I).  As stated by the *Zukerman* court, "[t]he severity of [Defendant]'s conduct remains unchanged. What has changed, however, is the environment where [Defendant] is serving his sentence. When the Court sentenced [Defendant], the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic."

*Zukerman*, 2020 WL 1659880, at *6 (citing *United States v. Rodriguez*, 2020 WL 1627331, at *12 (E.D. Pa. Apr. 1, 2020)).

As for the Government's argument that FCI Morgantown currently has zero confirmed cases of COVID-19, the Court is not persuaded that a lack of confirmed cases is a compelling reason not to grant relief if a defendant otherwise qualifies. The Court is persuaded by Defendant's use of *United States v. Amarrah*, case No. 5:17-cr-20464, R.E. 196, Pg.ID 4584-4585 (May 7, 2020). In *Amarrah*, Judge Levy aptly acknowledges that "zero *confirmed* COVID-19 cases is not the same thing as zero COVID-19 cases." *Id.* at 4584. Judge Levy continued by discussing the BOP's recent testing surge, which revealed that 70% of inmates tested in federal prisons had Coronavirus. *Id.* (citing Sadie Gurman, *More Than 70% of Inmates Tested in Federal Prisons Have Coronavirus*, The Wall Street Journal (Apr. 30, 2020), https://www.wsj.com/articles/more-than-70-of-inmates-tested-in-federalprisons-have-coronavirus-11588252023). In fact, the BOP acknowledged that it expects the number of confirmed cases to rise as testing increases. *Id.*

The Government asserts that the Court already considered Defendant's age and health conditions when it imposed the current 12-month sentence, which was 50% below the minimum of the applicable guideline range. [ECF No. 27, Pg.ID 232] While this is true, the Court finds that Defendant's age and underlying medical conditions further underscore why his relief should be granted. In this

case, Defendant's age, together with his chronic kidney disease, hypertension, and diabetes, meet that requirement. As the World Health Organization has determined, the populations most at risk of suffering severe health risks from COVID-19 are "older people, and those with underlying medical problems like cardiovascular disease [and] cancer." Coronavirus, World Health Organization (Apr. 27, 2020), https://www.who.int/health-topics/ coronavirus#tab=tab_1.  According to the United States Center for Disease Control, persons over the age of 65 and individuals of any age who have serious underlying medical conditions, including serious heart conditions and diabetes, are at higher risk for severe illness from COVID-19. People Who Are at Higher Risk for Severe Illness, Centers for Disease Control and Prevention (April 27, 2020), https://www.cdc.gov/coronavirus/ 2019-ncov/need-extra-precautions/people-at-higher-risk.html.

Defendant is among those persons most at risk.  Data released by the CDC indicates that approximately 80% of deaths from COVID-19 in the United States occur in individuals age 65 or older and that the fatality rate for individuals aged 65 to 84 could be as high as 11 percent. Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19) – United States, February 12 – March 16, 2020, Centers for Disease Control and Prevention (Mar. 26, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm. Although there are

currently no confirmed cases, as an inmate at FCI Morgantown, Defendant may have already been exposed to COVID-19.

This Court and others have held that compassionate release is justified under such conditions. *United States v. Doshi*, No. 13-20349, ECF No. 145 (E.D. Mich. Mar. 31, 2020) (recommending that the BOP release 64 year old defendant with diabetes and hypertension to home confinement); *Perez*, 2020 WL 1546422, at \*4 (the defendant was at risk of experiencing serious complications from COVID-19 due to medical complications arising from two vicious beatings while he was incarcerated); *Colvin*, 2020 WL 1613943, at \*4 (D. Conn. Apr. 2, 2020) (finding "extraordinary and compelling reasons justifying . . . immediate release under Section 3582(c)(1)(A) and U.S.S.G. § 1B1.13" where defendant has "diabetes, a serious medical condition which substantially increases her risk of severe illness if she contracts COVID-19" (internal quotation marks, citation, and alteration omitted)); *Rodriguez*, 2020 WL 1627331, at \*7 (granting compassionate release where defendant was "in the higher risk category for developing more serious disease" if exposed to COVID-19 because he "has Type 2 diabetes mellitus with diabetic neuropathy, essential hypertension, obesity, and abnormal liver enzymes in a pattern most consistent with non-alcoholic fatty liver disease") (internal quotation marks and citations omitted); *United States v. Jepsen*, 19 Civ. 73, 2020 WL 1640232, at \*5 (D. Conn. Apr. 1, 2020) (granting compassionate release to

defendant who "is immunocompromised and suffers from multiple chronic conditions that are in flux and predispose him to potentially lethal complications if he contracts COVID-19"); *United States v. Gonzalez*, No. 18 Cr. 1536155, 2020 WL 1536155, at *3 (approving compassionate release where defendant "is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable"); *United States v. Muniz*, 09 Cr. 199, 2020 WL 1540325, at *2 (finding extraordinary and compelling circumstances because "[d]efendant has been diagnosed with serious medical conditions that, according to reports from the Center[s] for Disease Control, make him particularly vulnerable to severe illness from COVID-19 . . . includ[ing] inter alia, end stage renal disease, diabetes, and arterial hypertension."); *United States v. Campagna*, No. 16 Cr. 78-01, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (approving compassionate release for defendant where his "compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify [d]efendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care").

For the reasons stated above, the Court finds that Defendant has demonstrated that extraordinary and compelling reasons justify a modification of his term of imprisonment.

### C. Other Considerations

The Government also argues that the Court cannot grant Defendant's relief because he has only served two months.

The BOP recently was allowed to "lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement." Coronavirus Aid, Relief, and Economic Security Act (CARES Act), § 12003(b)(2), Pub. Law 116-136, 134 Stat 281, 516 (Mar. 27, 2020).  The Attorney General has issued two directives to the BOP ordering the Bureau of Prisons to use the "various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." (03-26-2020 Directive to BOP, at 1; 04-03-2020 Directive to BOP, at 1).  The statutory authorities include the requirements in 18 U.S.C. § 3624(c) and (g) for home confinement in general, as well as the requirements in 34 U.S.C. § 60541(g) for some elderly and terminally ill offenders.

Citing USSG § 5C1.1, the Government asserts that the amount of time served places Defendant in Zone D of the sentencing table and he would need to be in Zone C and have served more than half of his sentence to qualify for home confinement. [ECF No. 27, Pg.ID 248] The Government contends that granting Defendant's relief after serving just two months would not achieve the sentencing

commission's broader goals of "general deterrence." Finding that society is in unprecedented times, the Court disagrees with the Government's interpretation and finds that the Court has the authority to modify sentences in appropriate circumstances, pursuant to 18 U.S.C. 3582(c)(1)(A); *see also United States v. Robinson*, No. 18-CR-00597-RS-1, 2020 WL 1982872, at *2 (N.D. Cal. Apr. 27, 2020).

The directives also require the BOP to identify the inmates most at risk from COVID-19 and "to consider the totality of circumstances for each individual inmate" in deciding whether home confinement is appropriate. (03-26-2020 Directive to BOP, at 1). However, as noted above, new Department of Justice directives instruct the BOP to consider "all at-risk inmates—not only those who were previously eligible for transfer" into home confinement. (04-03-2020 Directive to BOP, at 2).

For the reasons stated above, the Court grants Defendant's Emergency Motion for Immediate Reduction of Sentence (Compassionate Release) pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court finds that Defendant's crime was egregious, but it was ultimately nonviolent.

The Court also agrees that proper safeguards would ensure that Defendant continues to serve his term to completion and comply with Court guidelines. The

Court reduces Defendant's term of imprisonment portion of his sentence to time served, and the Court imposes a term of supervised release equal to the unserved portion of his original term of imprisonment (as calculated by the BOP). Unless Defendant has been in a segregated special unit for high-risk prisoners for more than 14 days where no inmate has tested positive or shown symptoms of COVID-19 within the past 14 days, the Court orders Defendant to self-quarantine within his home when he begins home confinement. Defendant shall serve the new term of supervised release under home confinement, with electronic location monitoring to commence as soon as the Probation Department can safely install the necessary electronic monitoring equipment and upon such other conditions as the Probation Department deems necessary.

I.      CONCLUSION

        Accordingly,

        IT IS ORDERED that Defendant's Emergency Motion for Immediate Reduction of Sentence (Compassionate Release) [ECF No. 25] is **GRANTED**.

        IT IS FURTHER ORDERED that Defendant's sentence of imprisonment is reduced to time served.

IT IS FURTHER ORDERED that the BOP shall release Defendant immediately, without holding for a 14-day quarantine period at FCI Morgantown, and Defendant shall remain self-quarantined for 14 days after release.

IT IS FURTHER ORDERED that, upon release, Defendant shall commence a new term of supervised release that is equal to the unserved portion of his original term of imprisonment (as calculated by the BOP).

IT IS FURTHER ORDERED that Defendant shall serve the new term of supervised release under home confinement, with electronic location monitoring to commence as soon as the Probation Department can safely install the necessary electronic monitoring equipment and upon such other conditions as the Probation Department deems necessary.

IT IS FURTHER ORDERED that, within 24 hours of release from BOP custody, Defendant shall call the Probation Department to schedule an appointment.

IT IS FURTHER ORDERED that Defendant's original term of supervised release is canceled.

IT IS ORDERED.

Dated: May 15, 2020                          s/Denise Page Hood
                                             Chief Judge, United States District